# GUY F. ATKINSON *v.* STATE TAX COMMISSION

John R. Hay, Portland, argued the cause for plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, argued the cause for defendant.

Decision for plaintiff rendered May 11, 1964.

PETER M. GUNNAR, Judge.

This is a suit to set aside defendant's Opinion and Order I-63-44 assessing additional corporation excise tax against plaintiff for its tax years 1957 and 1958. Defendant demurred to plaintiff's complaint. This demurrer is now before this court and the parties agree that the determination of this demurrer will dispose of the case.

Plaintiff is a large international construction concern. In Oregon it operates two manufacturing divisions, Willamette Iron & Steel Company and Bingham Pump Company. These divisions are engaged in manufacturing, processing and assembling materials into finished products for purposes of sale and maintain their plants in Oregon.

In its 1957 and 1958 excise tax returns, plaintiff claimed the personal property tax offset allowed by ORS 317.070. Subsection (2) of that section allows the offset to corporations described as follows:

"(2)·(a) Each corporation * * * which is primarily engaged in manufacturing, processing or assembling materials into finishing products for purposes of sale * * *."

Plaintiff acknowledges that substantially more than one half of its international business is construction contracting. However, its two manufacturing divisions did 60.56 per cent of plaintiff's 1957 Oregon business

and 78.57 per cent of its 1958 Oregon business. In claiming the offset, plaintiff contends that the above-quoted definition refers to a taxpayer's Oregon activities and not to all its activities wherever they take place.

Defendant disallowed the claimed offset in its Opinion and Order because it found that the statutory language refers to the whole corporate activity, and that administrative determination of legislative intent was unwarranted because the statute was unambiguous.

Determination of this conflict in construction is unaided by precedent. The parties cite none. In his argument defendant's counsel referred the court to House Bill 1823 of the Fifty-Second Legislative Assembly in 1963. Introduced by the Committee on Taxation, this bill sought to add to the above-quoted definition the additional qualification that the corporation "during the taxable year, maintained and operated in Oregon a plant engaged in such manufacturing, processing or assembling." The bill was tabled in the House Committee on Taxation on May 20, 1963. From its tabling defendant seeks to infer a legislative refusal to include plaintiff within the act's offset benefits. Such inference is unwarranted. A bill's tabling does not necessarily infer a refusal to adopt an amendment's concept. Bills are tabled for many reasons, including a determination that the original language already provided what the amendment sought to accomplish. Futhermore, the amendment proposed in House Bill 1823 neither adds nor detracts from plaintiff's eligibility, because plaintiff already maintains plants here. The issue in this case does not concern the maintenance of plants but the ratio of

plaintiff's qualifying and nonqualifying business within and without Oregon.

■■■ To decide this case, this court must first decide whether ORS 317.070(2)(a) is ambiguous. If it is not ambiguous, it must be construed in accordance with its plain meaning without reference to legislative intent. *State ex rel Appling v. Chase,* 224 Or 112, 116, 355 P2d 631 (1960). A word or phrase is ambiguous when it is doubtful or uncertain and is capable of being understood in either of two or more possible senses. *Estate of Black,* 211 C.A.2d 75, 85, 27 Cal. Rptr 418 (1962). Some words frequently used in statutes are inherently ambiguous because the legislature is establishing a standard which will vary with the facts of each case. "Primarily engaged" are such words. They are purposely incapable of exact definition because slightly different facts in each case determine their application. In differing cases and under varying statutes, these words may refer to quantity of production, dollar volume, time consumed, and other measuring factors. In each case the court must construe the meaning to apply the general statutory purpose to the facts of the case before it.

The statutory scheme of the personal property tax offset appears plainly from the language of the act and the history of the tax. Throughout Oregon's excise tax history, the legislature has recognized the heavy burden of property tax borne by manufacturing concerns. They have to bear this burden because they must accumulate raw materials, substantial work-in-process and finished goods. The offset is a legislative concession and a means of relating the over-all tax burden of manufacturing concerns with their income potential. Its purpose is to encourage manufacturing

and to avoid a stifling tax burden upon manufacturing enterprises.

■ With this purpose the legislature made ORS 317.070(2)(a) part of its Oregon-oriented excise tax act. This act imposes a tax on the right to do business in Oregon. The tax is measured by income earned in Oregon. The personal property tax which is offset is the Oregon tax. The measure of the offset is alternatively a part of the Oregon personal property tax or a part of the Oregon excise tax. To say that the right to offset the Oregon personal property tax so as to encourage business in Oregon is dependent upon the principal activity of the taxpayer internationally rather than its principal activity in Oregon, is incongruous and not in conformity with the obvious legislative intent. From the four corners of the act and its legislative history, and particularly from the offset provision itself, the legislative intent of ORS 317.070(2)(a) clearly is to permit the offset to corporations primarily engaged in Oregon in manufacturing, processing, or assembling materials into finished products for purposes of sale.

■ This conclusion can be supported alternatively by considering the definition of "primarily engaged." Defendant contends that this phrase means that the corporation must be chiefly or exclusively engaged in manufacturing, processing or assembling its finished products. Though plaintiff's contracting business is the largest part of its operations, its manufacturing activity here is substantial. A substantial activity is sufficient to qualify under the definition of "principally engaged" in *Federal Reserve System v. Agnew,* 329 US 441, 446, 67 S Ct 411, 91 L ed 408 (1947).

Speaking through Mr. Justice Douglas in that case, the United States Supreme Court said:

> "* * * It is true that 'primary' when applied to a single subject often means first, chief, or principal. But that is not always the case. For other accepted and common meanings of 'primarily' are 'essentially' (Oxford English Dictionary) or 'fundamentally' (Webster's New International). An activity or function may be 'primary' in that sense if it is substantial. If the underwriting business of a firm is substantial, the firm is engaged in the underwriting business in a primary way, though by any quantitative test underwriting may not be its chief or principal activity."

Using this definition, plaintiff is entitled to its claimed offset because its qualifying business in Oregon is clearly substantial.

■ In summation, this court finds that plaintiff is entitled to the offset it claims because the legislative intent of ORS 317.070(2)(a) is to grant the offset to corporations principally engaged in Oregon in manufacturing, processing, or assembling materials into finished products for purposes of sale and for the further reason that the term "principally engaged" can properly be construed to mean "substantially engaged."

Plaintiff shall prepare a decree setting aside and holding for naught defendant's additional assessment and awarding plaintiff its costs and disbursements.*

---

* Foregoing case affirmed by Oregon Supreme Court at 80 Or Adv Sh 187, 399 P2d 166.